**HOME STATE BANK, Plaintiff,**

v.

**William H. FUELL, Defendant.**

**Civ. No. 86–0068 (JAF).**

United States District Court,
D. Puerto Rico.

Feb. 13, 1987.

Iván C. Reichard, Woods & Woods, San Juan, P.R., for plaintiff.

Luis Ramón Ortiz-Segura, Mellado & Mellado, San Juan, P.R., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

This is an action filed pursuant to 28 U.S.C. sec. 1332 to enter judgment by the District Court of Wyandotte County, Kansas, in its Case No. 85–C–0208 Division 2, Home State Bank v. William H. Fuell, for $86,698.29, plus costs. It stands before us on two motions. First we have an unopposed motion for summary judgment by Home State Bank based on the mentioned Kansas money judgment. Additionally, the defendants have filed a motion to dismiss a tendered amended complaint, by which Fuell's wife Judith, and the conjugal partnership which they allegedly compose, were added as parties.[1] It is their contention that the added defendants were not

---

1. The motion to dismiss is, properly speaking, an opposition to the motion for leave to file

amended complaint, docket document No. 16.

parties to the Kansas lawsuit, that the Fuell's were married in the state of Missouri, where no community property or conjugal partnership exists, and that the Fuell's have always kept separate estates, both in Missouri and here in Puerto Rico. The motion to dismiss is opposed by Home State Bank, which has submitted copies of documents which it contends prove otherwise.

The problem of determining whether community-property regime, which exists under Puerto Rico's Civil Code,[2] applies to two non-Puerto Ricans who married outside of Puerto Rico in a state that does not have a community-property law, and without a prenuptial agreement regulating ownership of property, was recently discussed by the Supreme Court of Puerto Rico in *Toppel v. Toppel*, 114 D.P.R. 775 (1983). After a lengthy discussion of the conflict of laws problem, the history of the statutory doctrine, and the rules used in other jurisdictions, the Court laid down the following rules governing the determination as to applicability of the community-property regime:

1. The effects of marriage and divorce over the marital property regime pose conflict of law problems whose solution should not be entrusted to the statutory doctrine.

2. Even within the reduced field mentioned in the foregoing rule, the principles laid down here shall only govern the inter vivos relationship between the spouses. No pronouncement is made here with regard to the rules applicable to suits between third-party creditors and any of the spouses or both of them. Neither are we regulating problems of succession.

3. The singleness of marital property, overwhelmingly favored by civil law countries, shall also be the Puerto Rican rule. The recent Hague Convention on matrimonial regimes reiterates the singleness rule. Willis L.M. Reese, reporter of the second *Restatement*, supported, in the name of the United States, the draft

of the Convention. Reese, *The Thirteenth Session of the Hague Conference*, 25 Am.J.Comp.L. 393 (1977).

4. We adopt the center of marital interests doctrine, with the refinements furnished by the North American thought on the dominant contacts in the case of personal property, and other adjustments that may be inferred from what follows.

5. All conflict of law rules—a frequent phenomenon in law—run the risk of becoming a purely mechanical norm, reason why their cardinal purpose should never be forgotten. In Puerto Rico, the raison d'etre of the center of marital interests doctrine lies in the need to achieve equality between the spouses and to protect the wife, who has been excluded for so many centuries, against a possible manipulation of the rules and other injustices. In each case, the interests will be evaluated with said objective in mind. Further on we will discuss the relationship between this purpose and our legal system.

6. Among the private and public interests to be examined are: the habitual domicile or residence of the spouses, a factor which shall be the object of special consideration; the main situation of the pecuniary interests, principally in terms of the center of their investments and assets, and not of their liabilities; the situation of their affective relationships; the duration of their residence in different places; the strength of the bonds created in those places; the nationality of the parties; the needs of interstate and international systems; the pertinent policies of the forum; the pertinent policies of other affected states and their interest in the decision of the matter; the protection of the justified expectations of the parties; the basic policies underlying the field involved; the foreseeability and uniformity of the result in analogous situations; the protection of the weakest party; and the application, according to Leflar, of the fairest rule.

**2.** *See* Civil Code of Puerto Rico (1930), arts. 1295–1326, 31 L.P.R.A. 3621–3701.

7. The same interests shall help in the analysis of the mobile conflict, although their relative weight may change according to the circumstances. In this respect we adopt the partial mutability rule. Special consideration shall be given to the variant represented by art. 7 of the Hague Convention.[3] As to the difference between the theories of immutability, full mutability, and partial mutability, see: [H. Marsh, *Marital Property in Conflict of Laws* 14, 103 *et seq.*, Seattle, Univ. of Wash. Press (1952); 2 J.G. Castel, *Canadian Conflicts of Laws* 414, 424, Toronto, Butterworths (1977); 1 E. Rabel, *The Conflict of Laws* 380 *et seq.*, Ann Arbor, Mich. Law School (2d ed. 1958).] Partial mutability recognizes the possibility of a change in regime, absent a marriage contract, if certain circumstances concur to change the marriage's center of gravity.

*Toppel*, 114 D.P.R. at 790–92 (official translation).

■ We must, therefore, apply these criteria to the facts at hand: From the affidavit the Fuell's submitted, we find that they were married in the state of Missouri, where they remained domiciled until 1985, at which time they moved to Puerto Rico. They state that the concept of community property or the conjugal partnership does not exist in Missouri, and that their marriage did not constitute such unit; also, upon moving to Puerto Rico, they had no intention to create a community-property regime.

The bulk of their marital life was spent in Missouri. Their children were born there. Fuell ran his business, for better or worse, in nearby Kansas. By comparison, they have lived briefly in Puerto Rico. They may choose to make this their permanent home on a long-term basis; but there is no evidence before us to indicate that they have extended family here, or other binding ties to this jurisdiction which solidify their future here. We cannot conclude, therefore, that the center of gravity, so to speak, of this marriage, is Puerto Rico.

The Fuell's have expressed the desire *not* to avail themselves of the legal conjugal partnership in the only manner that they may—by declaration, inasmuch as they may not, under Puerto Rico law, formalize it in a contract once they have married. *See* Civil Code of Puerto Rico (1930), art. 1267, 31 L.P.R.A. sec. 3551. In view of the above, we find that the marital patrimony in question is not subject to the community-property regime.

■ Notwithstanding this finding, however, the documents submitted by plaintiff with its opposition to the motion to dismiss the amended complaint indicate that the Fuell's do jointly own some property, to wit: a car, a house, and a bank account. Because these items could be attached in the process of executing judgment against William Fuell, Judith Fuell's presence is necessary as an indispensable party under Fed.R.Civ.P. 19(a)(2)(i). Therefore, the complaint is amended to add Judith Fuell, but not a conjugal partnership, being that it does not exist between the parties. In this sense, the motion to dismiss/in opposition to tendered amended complaint is GRANTED ONLY AS TO THE CONJUGAL PARTNERSHIP.

3. Article 7 provides:
   The law applicable under the Convention continues to apply so long as the spouses have not designated a different applicable law and notwithstanding any change of their nationality or habitual residence.
   Nonetheless, if the spouses have neither designated the applicable law nor concluded a marriage contract, the internal law of the State in which they both have their habitual residence shall become applicable, in place of the law previously applicable.
   1. when that habitual residence is established in that State, if the nationality of that State is their common nationality, or otherwise from the moment they become nationals of that State, or
   2. when, after the marriage, that habitual residence has endured for a period of not less than ten years, or
   3. when that habitual residence is established in cases when the matrimonial property regime was subject to the law of the State of the common nationality solely by virtue of sub-paragraph 3 of the second paragraph of Article 4.

**116**

■ Addressing the motion for summary judgment by Home State Bank, we find that in the answer to the complaint, defendant Fuell asserts as an affirmative defense that the Kansas judgment was obtained in violation of due process. The Fuell's, however, have not even filed an opposition to the summary judgment motion, let alone any affidavit or other support for their allegation. A party who would oppose such a motion may not rest on the mere allegations or denials of his pleadings but, setting forth specific facts, Fed.R.Civ.P. 56(e), must establish the existence of an issue of fact which is material.

The United States Constitution exhorts that full faith and credit be given by each state to the judicial proceedings of every other state. U.S. Const. art. IV, sec. 1; *see also* 28 U.S.C. sec. 1738. Plaintiff has submitted a certified copy of the journal entry of the decision of the District Court of Wyandotte County, Kansas. There being no opposition to the motion for summary judgment, it is hereby GRANTED. Judgment for plaintiff in the amount of $86,-698.29, plus costs, shall be entered accordingly.

IT IS SO ORDERED.